DAVID APPEL t/a DAVID APPEL OFFICE EQUIPMENT COMPANY, PLAINTIFF, v. REPUBLIC FOOTWEAR, INC., A CORPORATION OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided October 24, 1961.

*Mr. Robert Boyle, III,* attorney for the plaintiff landlord.

*Mr. J. Mortimer Rubenstein,* attorney for the plaintiff wage claimants.

*Mr. Andrew Mainardi, Jr.,* receiver, *pro se.*

GRIMSHAW, J. S. C.   This case involves a question of priority between wage claimants under *R. S.* 14:14–21 and a landlord who has distrained for rent under *N. J. S.* 2A:33–1 *et seq.*  On March 8, 1960 Vaugn Hall, the landlord of the insolvent Republic Footwear, Inc., distrained for rent then owing in the sum of $7,282.58. A bailiff was appointed to execute a distress warrant and said warrant was executed and served on the officers of Republic on March 8, 1960. On the same day, the goods and chattels of Republic were levied upon and an inventory was taken.   On March 18, 1960 a notice of intention to appoint three appraisers on March 21, 1960 was served upon Republic together with a notice to the appraisers that the bailiff intended to appoint them on March 21, 1960.   The three appraisers were appointed and they filed their oaths on March 21, 1960 and an appraisal of the inventory was thereafter made by them. On March 21, 1960 a notice of sale to be held on March 29, 1960 was posted in five public places.

On March 18, 1960 a deed of assignment for the benefit of creditors, executed by Republic Footwear, Inc. in favor of Jacob K. Beron, was recorded in the Passaic County Register's office.   The assignment was in escrow, but the deed was released from escrow after March 8, 1960, which was the date of the distraint.   On March 25, 1960 a custodial receiver was appointed and a scheduled sale of the distrained goods was enjoined.   Republic was subsequently declared insolvent and a statutory receiver was appointed on April 8, 1960.

The position taken by the wage claimants in the instant case is that the express language of *R. S.* 14:14–21 gives them priority to the funds to be realized from the sale of the goods distrained by the landlord.   The landlord, on the

other hand, argues that the wage claimants cannot be prior to his claim, notwithstanding the express language of *R. S.* 14:14–21, since he, having perfected his lien claim, divested the insolvent tenant of its legal title to the goods, leaving only an equitable interest in the tenant which could come into the hands of the receiver.

The issue of priority between wage claimants and a landlord having a claim for delinquent rent has had varying solutions dependent upon the wording of the statutory language pertaining to the rights of wage claimants. Thus, under the 1887 Corporation Act, our former Court of Chancery in *Wright v. Wynockie Iron Co.*, 48 *N. J. Eq.* 29 (*Ch.* 1891), held that a landlord who had perfected his distraint prior to an adjudication of insolvency of its tenant had priority over wage claimants in the distribution of the insolvent's assets.

A material change in New Jersey's position *re* the rights of wage claimants took place in the case of *Fitzgerald v. Maxim Powder Manuf'g Co.*, 33 *A.* 1064 (*N. J. Ch.* 1896). Plaintiffs in the *Fitzgerald* case were wage claimants under the 1892 Corporation Act, which bore a substantial similarity to our present *R. S.* 14:14–21. The defendant in the case was a judgment creditor who had recovered a judgment, issued an execution and levied on the insolvent's lands before a bill for receivership was filed. Sale by the judgment creditor was enjoined pending the disposition of the insolvent's estate. The court stated that under the 63rd section of the former 1887 Corporation Act, "* * * it had always been held that the receiver in insolvency took the property of the company subject to the liens of mortgages and judgments obtained before the adjudication of insolvency." The court went on to say that the language of the "new" 1892 Corporation Act changed the prior law, holding that now:

"* * * by the second section [of the 1892 act], the entire assets or property of the corporation which came to the receiver for administration, whether incumbered by previous liens or not, was,

with certain exceptions, charged with the prior payment of these debts due to laborers. * * * Stating the result in another form, I may say that the word 'assets' as used in the act of 1892, seems to have been used in the ordinary or usual business sense of the word, as intended to include all the property which would come to the receiver's possession, whether subject to liens or not, rather than in the technical or legal sense applied to the word under the sixty-third section of the corporation act, where it was held to mean only the company's ultimate rights in the property." 33 *A.*, at *p.* 1067.

■ While it is clear that the landlord's claim for rent becomes a lien when a distraint is actually made, the question still remains as to whether the landlord's lien is prior to the claim of wage claimants under *R. S.* 14:14–21.

In *Whitehead v. Whitehead Pottery Co.*, 115 *N. J. Eq.* 257 (*Ch.* 1934) it was held, at *pages* 259–60, that:

"By the force and effect of the terms of the statute, in the distribution of a statutory receiver of the assets of an insolvent corporation, wage claims are preferred ahead of *all* other claimants, except the specified chattel and real estate mortgage holders. Those statutory provisions have not been modified in favor of the claims of landlords or liens under distress for rent, by any subsequent legislation. The wage claims are entitled to priority; and the receiver's determination in this behalf will be sustained."

■■ In the instant case, there can be no question but that the landlord's lien was first in point of time to the wage claimants' lien. On the other hand, the wage claimants' lien did not take effect, under the statute, until the court assumed jurisdiction by administering the assets of the insolvent company. It is my opinion, however, that even though the landlord's lien was prior in time to the wage claimants' lien, the wage claimants are entitled to priority over the landlord.

The provisions of *R. S.* 14:14–21 are as follows:

"In case of the insolvency of a corporation all persons doing labor or service of any character, in the regular employment of the corporation, shall have a lien upon its assets for the wages due them respectively for all labor, work and services performed within two months next preceding the date when insolvency proceedings shall be actually instituted against such insolvent corporation.

Such lien shall be prior to all other liens that can or may be acquired upon the assets, except that of (1) a chattel mortgage recorded more than two months next preceding the date when proceedings in insolvency shall have been actually instituted against the insolvent corporation, (2) a chattel mortgage for money loaned or for goods purchased within two months next preceding the date when such proceedings in insolvency shall have been actually instituted, recorded within such period of two months, and (3) mortgages upon the real estate of the insolvent corporation."

The above language very clearly indicates that the wage claimants are prior to "all other liens that can or may be acquired" with the exception of three types of liens which do not include a landlord's lien. It has been the policy of the Legislature of this State to protect wage claimants from the vicissitudes of business disaster, and as our former Court of Errors and Appeals said in *Long v. Republic Varnish Enamel, &c., Co.*, 115 *N. J. Eq.* 212 (*E. & A.* 1934), at *page* 214:

"The legislative purpose [of *R. S.* 14:14–21] is evident. There was a twofold object: First, to prevent those persons whose labor was indispensable to the continuance of the business of the corporation from abandoning it, and thus suspending its operations, whenever they became alarmed by a fear of losing their wages; and, second, to give protection to a class of persons who generally work for small compensation, to whom the product of their daily labor is the sole means of support, and who are unable to protect themselves against the misfortune or fraud of their employers."

And at *pages* 215–16:

"The Legislature, * * * has declared a beneficent policy, and the act should be liberally construed to effectuate it. * * * It has long been regarded as a proper function of the state to foster the welfare and safeguard the interests of wage-earners. Economic and other considerations underlie this long-established state policy."

See, also, *Mersereau v. Mersereau Co.*, 51 *N. J. Eq.* 382 (*Ch.* 1893).

In view of the above, I am of the opinion that the wage claimants are entitled to priority over the landlord.